818 P.2d 237

**Scott J. CLELAND, Plaintiff/Appellant,**

v.

**CORRECTIONS OFFICER RETIREMENT PLAN and its Fund Manager, Defendants/Appellees.**

No. 2 CA–CV 91–0090.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 24, 1991.

---

a paid lunch hour may be within the scope of employment.

Law Offices of Scott MacMillan Baker, P.C. by Scott M. Baker, Tucson, for plaintiff/appellant.

Lieberman, Dodge & Sendrow, Ltd. by Marc R. Lieberman, Phoenix, for defendants/appellees.

## OPINION

LACAGNINA, Presiding Judge.

In this appeal from the judgment of the superior court, Scott J. Cleland argues that the Corrections Officer Retirement Plan (the Fund) and its manager abused their discretion by failing to properly weigh evidence of his accidental disability and that its definition of "gainful employment" violates A.R.S. § 38–881. We disagree and affirm.

## FACTS AND PROCEDURAL HISTORY

On January 30, 1989, Cleland submitted an application for an accidental disability pension, alleging that he had reinjured his knee while working at Fort Grant as a prison guard. Cleland stated in his application that he had had problems with his knee since 1984. He began working for the Department of Corrections in 1985. He also stated that he was not qualified for any other job with the state.

Cleland had four administrative hearings and two superior court hearings beginning on April 28, 1989, and ending with the superior court judgment of February 7, 1991, denying his application for disability benefits from the Fund. The Fund Manager consists of five members selected from the community who serve for nominal pay. It has statutory authority to evaluate Fund members regarding their qualifications for accidental disability retirement. A.R.S. § 38–886(A)(3).[1] After receiving evidence at the hearings and following remand from the first superior court hearing, the Fund Manager determined that medical testimony demonstrated Cleland's December 29, 1987 injury did not prevent him from engaging in "any gainful employment" and that his disabling condition was not the "direct and proximate" result of his employment as a prison guard.

On review of the denial of benefits by the Fund, the superior court found that the decision was based upon a consideration of all the evidence presented; that the deliberations were open to the public and that Cleland's departure from the hearing while deliberations were in progress was a voluntary act; that the Fund Manager's interpretations of "any gainful employment" was within its discretion and that there was sufficient evidence in the record to support the denial of benefits.

### SUFFICIENCY OF EVIDENCE

■ We affirm the superior court's judgment because the record shows the existence of substantial evidence to support the administrative ruling. *Petras v. Arizona Liquor Board*, 129 Ariz. 449, 631 P.2d 1107 (App.1981). The testimony of medical experts and a rehabilitation specialist, although contradicted in part by other testimony, is nevertheless sufficient to support the denial of benefits. Dr. Dasse believed that Cleland could perform a moderate amount of work with reasonable regularity and that the disabling knee condition was primarily the result of Cleland's signif-

icant past history of knee injuries and surgeries rather than his employment as a prison guard. Ms. Lynch, a rehabilitation specialist, believed that Cleland was capable of working entry-level jobs that do not require a lot of reading or considerable physical strain. The Fund Manager properly rejected testimony indicating that Cleland qualified for social security benefits because the statutory tests for determining eligibility for social security disability are not the same. Substantial evidence exists when the record shows that the administrative agency adopted one of two inconsistent factual conclusions. *Williams v. Tucson Unified School District*, 158 Ariz. 32, 760 P.2d 1081 (App.1987); *DeGroot v. Arizona Racing Commission*, 141 Ariz. 331, 686 P.2d 1301 (App.1984).

### STATUTORY CONSTRUCTION

■ A.R.S. § 38–881(1), as it existed when Cleland filed his application, defined "accidental disability" as

[A] physical or mental condition which the Fund Manager finds totally and permanently prevents a member from engaging in any gainful employment and which is the direct and proximate result of the member's performance of his duty as an employee of an employer. A finding of accidental disability shall be based on medical evidence obtained by a medical doctor or clinic selected by the Fund Manager.

There is no statutory definition of "gainful employment." During the proceedings on Cleland's application for benefits, the Fund Manager issued a memorandum defining the term "any gainful employment" as provided in A.R.S. § 38–881(1). It was defined as

[T]he capability of performing a moderate amount of work with reasonable regularity, or more specifically, at least four (4) hours of work four (4) days a week for which the claimant earns at least $300 monthly and/or the minimum hourly wage. "Gainful employment" is not

---

1. This responsibility was shifted to local boards in September 1990. Laws 1990 Ch. 272 §§ 1, 2, 4 and 8.

restricted to the type of work performed before impairment, nor is it limited to job opportunities actually available and/or located near the claimant's home.

The Fund Manager's definition is a reasonable interpretation of the statutory language. "Gainful employment" has not been restricted to the type of work a claimant performed before becoming impaired. *Bailey v. Weinberger*, 380 F.Supp. 863 (D.Kan.1974). Nor does the retirement plan in this case restrict "gainful employment" to job opportunities actually available and/or located near the claimant's home. In any event, if not in line with the legislative intent, the definition can be corrected by the legislature. The judgment of this court should not be substituted for the reasoned attempt to define a statutory term by the administrative agency charged with the responsibility for determining eligibility for disability retirement.

In addition to finding an applicant unemployable, pursuant to A.R.S. § 38–881(1) the Fund Manager must also find that the disabling condition "is the direct and proximate result of the member's performance of his duty," in this case, as a prison guard. This phrase is not defined by the statute or the enabling legislation creating the Fund. The Fund Manager, utilizing dictionary definitions of the words "direct" and "proximate", concluded that an applicant must prove that his disabling condition arises immediately from and is primarily caused by or attributable to his employment as opposed to other factors. Webster defines "direct" as "stemming immediately from a source ... characterized by or giving evidence of a close, esp. logical, causal or consequential relationship ... marked by [the] absence of an intervening agency, instrumentality, or influence." *Webster's Third New International Dictionary* at 640 (1961). "Proximate cause" is defined as "a cause that directly or with no mediate agency produces an effect." *Id.* at 1828. *Black's Law Dictionary* defines "proximate" as "closest in causal connection." *Black's Law Dictionary* at 1103 (5th ed. 1979).

There exists substantial evidence in the record showing that Cleland's disability is primarily attributable to a long-standing pre-existing degenerative knee condition unrelated to his employment. Medical records introduced into evidence indicate that Cleland first injured his knee in 1978. Thereafter, an arthrotomy was performed for surgical removal of an osteochondral body in his knee. In September 1979, he complained of tearing in his knee, and was diagnosed as suffering from lateral displacement of the patella which was treated by surgery in 1980. In 1980, he also injured his left knee. In September 1984, an injury to his right knee while fishing resulted in a diagnosis that Cleland suffered chronic knee problems related to injuries. Later in 1984, another arthroscopy, patellar shaving, partial synovectomy and lateral patellar renticular release were performed. After this surgery, he was diagnosed as suffering from severe grade IV progressive chondromalacia of the patella from progressive subluxation of the patella.

█ Cleland went to work as a prison guard in May 1985 and, after his on-the-job injury in December 1987, the diagnosis was the same as it was before he began his employment with the state. In view of the medical testimony and records, Dr. Dasse's conclusion, relied on by the Fund Manager, that because of Mr. Cleland's "significant past history of pre-existing knee injuries and surgeries to the knee," his "disabling knee condition did not stem primarily through his employment as a prison guard," was not arbitrary or an abuse of discretion and is supported by sufficient evidence. Although Cleland may qualify for social security or workers' compensation benefits, that fact is irrelevant to his qualification for a disability pension from the Fund. Public pension and disability plans are not forms of unemployment compensation but rather have unique provisions for retirement and disability unrelated to workers' compensation. *Wills v. Pima County Public Safety Personnel Retirement Board*, 154 Ariz. 435, 743 P.2d 944 (App.1987).

█ We also reject Cleland's argument that he was denied due process because the

deliberations of the Fund Manager occurred after he and his attorney left the hearing. The record shows that both the evidentiary hearing and deliberations were open to the public and that Cleland and his attorney left an ongoing hearing before the deliberations. In addition, the transcript of the deliberations show that the evidence was discussed and the Fund Manager members deliberated among themselves before reaching their decision. We affirm the judgment of the superior court.

LIVERMORE, C.J., and HOWARD, J., concur.